*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TERRILL DIONTE CHANEY,

Defendant-Appellant.

UNPUBLISHED
July 09, 2026
3:38 PM

No. 366830
Genesee Circuit Court
LC No. 2021-047676-FC

Before: YOUNG, P.J., and BORRELLO and TREBILCOCK, JJ.

PER CURIAM.

As a result of a cold-case investigation, the Flint Police Department connected defendant, Terrill Chaney, and his accomplice, Kendall Thornton, to the 2011 robbery and fatal shooting of Tamara Bates. They were jointly tried over a decade later, with the prosecutor's primary evidence being (1) a text-message exchange from 2011 during which a witness relayed that defendant admitted that the pair broke into Bates's home to look for money and that Thornton shot a woman in the process, (2) testimony from another witness that defendant spoke to him about the robbery and killing, and (3) Thornton's latent prints at the scene. Based on this and other evidence, a jury convicted defendant of felony-murder, MCL 750.316(1)(b); armed robbery, MCL 750.529; and first-degree home invasion, MCL 750.110a(2), but acquitted him on felony-firearm charges. The trial court, applying a second-offense habitual offender enhancement under MCL 769.10, sentenced defendant to a mandatory sentence of life imprisonment without the possibility of parole for felony-murder, to 285 months' to 50 years' imprisonment for armed robbery, and to 140 months' to 50 years' imprisonment for first-degree home invasion.

On appeal, defendant—through counseled and Standard 4 briefs—raises several claims concerning insufficient evidence, evidentiary determinations, jury instructions, sentencing, and ineffective assistance of counsel. We affirm his convictions, vacate his felony-murder sentence due to binding authority from our Supreme Court concerning those who were 19-years old (like defendant) during the commission of a crime that resulted in a mandatory life-without-the-possibility-of-parole sentence, and remand for resentencing consistent with this opinion.

-1-

## I. EVIDENCE SUPPORTING DEFENDANT'S CONVICTIONS

We turn first to defendant's contention that the prosecutor presented insufficient evidence to sustain the convictions for armed robbery, first-degree home invasion, and felony-murder, and his alternative argument that the jury verdict went against the great weight of evidence.

*Sufficiency of the Evidence.* "In determining whether sufficient evidence exists to sustain a conviction, this Court reviews the evidence in the light most favorable to the prosecution, and considers whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (quotation marks and citation omitted). "The standard of review is deferential; a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015) (quotation marks and citation omitted).

The record here reveals that a rational juror could easily find the evidence sufficient to support that defendant participated in an armed robbery, first-degree home invasion, and murder. Consider first the contemporaneous text messages indicating Thornton and defendant sought to steal money from the victim's home and kicked the door open. Evidence discovered from the scene corroborated that account—a gun was taken from the home, the door was indeed kicked open, and impressions of Thornton's "left middle finger three times, his left palm one time, and his left little finger once" were found on a garbage bag at the scene. And if that were not enough, defendant later told a witness, Jerod Blond, that he and "KD" (Thornton's nickname) "went and hit a lick" (a robbery) and that "a lady was shot in the midst of the . . . lick." Forensic evidence also revealed that Bates was shot and killed with a gun other than the AK-47 stolen from the home. These facts more than establish the elements of armed robbery, *People v Muhammad*, 326 Mich App 40, 61; 931 NW2d 20 (2018), first-degree home invasion, *People v Bush*, 315 Mich App 237, 244; 890 NW2d 370 (2016), and felony murder, *People v Beck*, 510 Mich 1, 31 n 17; 987 NW2d 1 (2022).

Noting the prosecution's aiding-and-abetting theory of liability under MCL 767.39 required it to "show that [defendant] either intended to kill, intended to cause great bodily harm, or wantonly and willfully disregarded the likelihood that the natural tendency of his behavior was to cause death or great bodily harm," *People v Riley*, 468 Mich 135, 140-141; 659 NW2d 611 (2003), defendant asserts the evidence below lacks malice supporting his felony-conviction. We cannot agree. Because it is difficult to prove a person's state of mind, minimal circumstantial evidence can establish *mens rea*. See, e.g., *People v Unger*, 278 Mich App 210, 223; 749 NW2d 272 (2008). And on that score, our Supreme Court has expressly stated that "[a] jury may infer malice from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm" or "from the use of a deadly weapon." *People v Carines*, 460 Mich 750, 759; 597 NW2d 130 (1999), mod on other grounds by *People v King*, 512 Mich 1; 999 NW2d 670 (2023). Indeed, Carines, like defendant here, "set in motion a force likely to cause death or great bodily harm" by "engaging in an armed robbery" with others. *Id*. at 760.

Defendant offers two more rejoinders. First, he suggests a lack of evidence tying him to the murder scene (like no eyewitnesses or his DNA) and that the prosecution's witnesses were incredible. Those are arguments better directed to a jury as the trier of fact, not an appellate court

that must give considerable deference to the jury. See *Oros*, 502 Mich at 239. Second, defendant notes that the jury acquitted him on felony-firearm charges. That much is true, but immaterial, for "a jury's verdict regarding one offense does not preclude it from reaching a different conclusion when that offense forms an element of another crime." *People v Chelmicki*, 305 Mich App 58, 67; 850 NW2d 612 (2014).

Accordingly, sufficient evidence supported defendant's convictions.

*Great Weight of the Evidence*. "A verdict is against the great weight of the evidence and a new trial should be granted when the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." *People v Solloway*, 316 Mich App 174, 182-183; 891 NW2d 255 (2016) (quotation marks and citation omitted). "Generally, a verdict is against the great weight of the evidence only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *People v Anderson*, 341 Mich App 272, 277; 989 NW2d 832 (2022) (quotation marks and citation omitted). We review a trial court's conclusion concerning the great weight of evidence for abuse of discretion. *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009).

As set forth above, ample evidence supports the jury's verdict. Defendant disagrees, raising arguments—as he did in arguing lack of sufficient evidence—concerning witness credibility and the lack of eyewitnesses or DNA evidence tying defendant to the scene. He contends, for example, that Blond's testimony and the text messages were highly suspect, and that McCaskill never discussed a murder with him in 2011. Those are classic jury arguments that are "generally insufficient grounds for granting a new trial" and are rather reserved "for the trier of fact." *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008).

In sum, we see no abuse of discretion in the trial court's conclusion that the jury's verdicts were not against the great weight of the evidence.

## II. THE TRIAL COURT'S EVIDENTIARY RULINGS

We next turn to defendant's various admission-of-evidence challenges, which this Court reviews for an abuse of discretion. *People v Thorpe*, 504 Mich 230, 251; 934 NW2d 693 (2019). Decisions involving "a close evidentiary question ordinarily cannot be an abuse of discretion." *Id*. at 252. Instead, we may not disturb a trial court's evidentiary decision unless it falls outside the range of principled outcomes. *Id*.

*McCaskill's 2017 Police Interview*. Defendant first contends that the trial court should not have admitted the recording of DeShawn McCaskill's 2017 police interview, during which McCaskill discussed his sending and receiving text messages to another (Kadeem Carter) just after the murder that implicated defendant and Thornton. On appeal, defendant claims the prosecution did not establish the foundational requirements to admit it as a recorded recollection under MRE 803(5). We disagree.

The plain text of MRE 803 excludes the following from the hearsay rule even when the declarant is available to testify:

**(5) Recorded Recollection.** A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

To qualify as an admissible recorded recollection under MRE 803, three foundational requirements must be satisfied: "(1) the document pertains to matters about which the declarant once had knowledge, (2) the declarant has an insufficient recollection of those matters at trial, and (3) the document was made or adopted by the declarant while the matter was fresh in his or her memory." *Chelmicki*, 305 Mich App at 64.

The trial court did not abuse its discretion by admitting McCaskill's interview into evidence under MRE 803. McCaskill testified that he did not remember any police officers coming to talk to him in 2011 about text messages, said that he did not remember anything at all from 2011, and had no recollection of police interviewing him at his job in December 2017. In short, McCaskill once had knowledge of the information discussed during the interview but at trial did not. And while McCaskill did not "make" the audio recording, he accepted the statements made in it as the maker of those statements. Defendant proffers no argument that the audio recording was tampered with or otherwise altered. His challenge to its admission under MRE 803, therefore, lacks merit.

Defendant also contends that the trial court should have excluded the 2017 interview under MRE 403 because its probative value was outweighed by unfair prejudice. But MRE 403 does not exclude all relevant, prejudicial evidence; rather, it prohibits the admission of unfairly prejudicial evidence. See *People v Lowrey*, 342 Mich App 99, 109; 993 NW2d 62 (2022). That occurs "where there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence." *Id*. at 109-110 (quotation marks and citation omitted). Here, the 2017 interview was highly probative of defendant's and Thornton's participation in the crimes, and it was not an abuse of discretion to admit it in light of there being no unfair prejudice—nothing in the interview is beyond the pale or reflects extraneous influences.

*Text Messages*. The trial court admitted McCaskill's text messages that implicated defendant's involvement in Bates's murder through MRE 801(d)(1). Both parties agree that rule—which excludes from hearsay a declarant's prior statement under certain conditions—did not apply to McCaskill's text messages. That agreed-upon error, however, does not merit reversal because we can affirm a trial court's decision if it reached the correct result for the wrong reason. *People v McLaughlin*, 258 Mich App 635, 652 n 7; 672 NW2d 860 (2003). While inadmissible under MRE 801(d)(1), McCaskill's text messages were admissible under the present-sense-impression hearsay exception, MRE 803(1), because in them McCaskill—the declarant—contemporaneously relayed statements defendant made to him. See *Chelmicki*, 305 Mich App at 63 (explaining that MRE 803(1) permits the admission of a hearsay statement when: (1) the statement provides "an explanation or description of the perceived event," (2) the declarant "personally perceived the event," and (3) the explanation or description was "made at a time substantially contemporaneous with the event") (quotation marks and citation omitted). And to the extent the text messages reflected statements *defendant* made to McCaskill, such statements were not hearsay when offered

against defendant at trial. See MRE 801(d)(2)(a); *People v Smith*, 336 Mich App 79, 110; 969 NW2d 548 (2021) ("The statement of a party-opponent offered against that party at trial is not hearsay.").

*Facebook Posts*. Defendant's last evidentiary point concerns the introduction of a post on Facebook by one of his family members containing a police report that included defendant's statements to McCaskill. At trial, McCaskill denied being afraid to testify. Over defendant's objection, the trial court admitted the post during the testimony of one of the investigating law enforcement officials, who testified that McCaskill showed him a screenshot of a police report containing McCaskill's name that had been posted on social media and that McCaskill seemed "very afraid" that something would happen to him if he testified. It expressly did so just for the effect on McCaskill, which it reiterated to the jury in an instruction that it could "only consider the information contained [in the Facebook posts] for its effect on . . . McCaskill and his willingness to testify."

We disagree with defendant that the trial court abused its discretion by not excluding this evidence under MRE 403. It was highly probative, helping explain McCaskill's subsequent denials concerning what he knew about the murder. More importantly, it was not unfairly prejudicial given the jury already knew about those alleged statements, which lessened any prejudicial impact. See *Lowrey*, 342 Mich App at 109. And even if not, we must presume that the jury followed the trial court's instruction that it only consider the information for its effect on McCaskill. See *People v Serges*, 351 Mich App 88, 131; 34 NW3d 550 (2024).

## III. UNANIMITY INSTRUCTION

We briefly note that defendant asserts that he was entitled to a unanimity instruction with regard to the charge of felony-murder because the prosecutor's theory was that the underlying felony for the charge was first-degree home invasion *or* armed robbery. But his attorney affirmatively waived the instructional issue by approving the jury instructions. *People v Miller*, 326 Mich App 719, 726; 929 NW2d 821 (2019). We separately address his related ineffective-assistance claim concerning this issue below.

## IV. SENTENCING

Defendant's contends, and the prosecution agrees, that because he was 19 years old at the time of the murder, he is entitled to a hearing under *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012), so that attributes of youth can be taken into account at his sentencing for felony-murder.

In *Miller*, the United States Supreme Court held that mandatory life without the possibility of parole sentences for those under the age of 18 at the time of their crimes constitutes cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution. *Id*. at 465. The Court also held sentencing courts may still exercise their discretion to impose life sentences on juveniles (after consideration of certain factors), *id*. at 477-479, but emphasized that they must be able to impose lesser sentences by considering the "mitigating qualities of youth," *id*. at 476 (quotation marks and citation omitted). Our Supreme Court has since extended *Miller*'s holding under Michigan's similar constitutional proscription to include 18-year-old offenders,

*People v Parks*, 510 Mich 225, 244-245; 987 NW2d 161 (2022), as well as 19- and 20-year-olds, *People v Taylor*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket Nos. 166428 and 166654); slip op at 2, 37-38. This caselaw requires us to vacate defendant's felony-murder sentence and remand for resentencing consistent with *Miller* and MCR 769.25.

Defendant also requests reassignment on remand because of the sentencing judge's following comments:

> But I can see now that Mr. Chaney and Mr. Thornton are going to exit the courtroom as they came in and as they were on the evening of April 4 of 2011, as cowards, who broke into a lady's home, who had nothing to do with this unfortunate situation other than being present, and shot her in the face and left her for dead, while they ran from the home.
>
> And then they intimidated witnesses and lived as free men for years, until ultimately, through the work of the police department, they were apprehended and now stand here as convicted murders, which is exactly what you are.
>
> You two sat right over here during the trial calm as cucumbers, not a care in the world. I've never seen anybody, and I've sat through many a murder case as a prosecutor and a defense lawyer and as a Judge, and I have not seen two individuals as unconcerned about their circumstances on trial for murder as you are and as seemingly unconcerned as you are today about to be sentenced to life without the possibility of parole, which is exactly what you deserve.

These comments, contends defendant, demonstrate "that the trial judge would have substantial difficulty in setting aside those feelings and findings at a *Miller* hearing. . . ."

This Court considers several factors when deciding if a different judge should preside during a resentencing hearing:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness. [*People v Walker*, 504 Mich 267, 285-286; 934 NW2d 727 (2019) (quotation marks and citations omitted).]

Viewing the record through these factors, reassignment is not in order. It was not "erroneous" or faulty for the trial court to indicate that Thornton and defendant acted cowardly and had intimidated witnesses. See *People v Brcic*, ___ Mich App ___, ___; ___ NW3d ___ (2026) (Docket Nos. 362727 and 366230), slip op 16-17 ("strong negative views" about a defendant "tied in part to fact" are not enough to warrant reassignment). Nor is there any indication that the trial court would not comply with new caselaw mandating that attributes of youth be taken into account when resentencing defendant—indeed, the trial court acknowledged it would do so during the

sentencing hearing *if* the law changed to cover 19-year-olds. The trial was lengthy, and the time it would take for a new judge to become familiar with the proceedings would be substantial. See also *id*. at ___; slip op. 17.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

That leaves us with defendant's ineffective-assistance-of-counsel claims concerning (1) jury instructions; (2) the joint trial with Thornton; (3) potential alibi witness testimony; and (4) expert witness testimony. He preserved all but the last issue by raising them in his (a) motion for a new trial or a hearing under *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973), and (b) motion for remand in this Court. We also note trial counsel passed away after trial and before the trial court could resolve defendant's motion for a new trial.

## A. LEGAL OVERVIEW AND REVIEW STANDARD

The United States and Michigan Constitutions entitle a criminal defendant to assistance of counsel. US Const, AM VI; Const 1963, art 1, § 20. Counsel must be effective to satisfy the constitutional requirement. *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "Effective assistance of counsel is strongly presumed, and the defendant bears the heavy burden of proving otherwise." *People v Haynes*, 338 Mich App 392, 429; 980 NW2d 66 (2021) (quotation marks and citations omitted). "In order to obtain a new trial because of ineffective assistance of counsel, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that [the] outcome would have been different." *People v Yeager*, 511 Mich 478, 488; 999 NW2d 490 (2023) (quotation marks and citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quotation marks and citations omitted).

Under *Strickland*, "[j]udicial scrutiny of counsel's performance must be highly deferential." 466 US at 689. This means courts "must," among other things, "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action *might be considered sound trial strategy*." *Id*. (quotation marks and citation omitted; emphasis added). Accordingly, this Court does not second-guess counsel on matters of trial strategy or assess counsel's competence with the benefit of hindsight. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). Counsel has wide discretion in matters of trial strategy, and "may be required to take calculated risks to win a case." *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012). Finally, we note this could-the-decision-be-strategic rubric applies even if trial counsel, as here, dies before being afforded the opportunity to testify at a *Ginther* hearing. See, e.g., *People v Carbin*, 463 Mich 590, 597, 601-602; 623 NW2d 884 (2001) (finding strategic trial counsel's decision to not interview witnesses despite trial counsel having died before a *Ginther* hearing).

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020) (quotation marks and citation omitted). We review findings of fact for clear error and

constitutional determinations de novo. *Id*. Because the trial court did not conduct a *Ginther* hearing, "our review is for errors apparent on the record." *Id*.

## B. JURY INSTRUCTIONS

Three of defendant's ineffective-assistance claims concern jury instructions.

*Lesser Included Instruction*. First, he contends that his trial counsel should have requested a second-degree murder instruction as a necessarily included lesser offense to felony-murder. *See People v Clark*, 274 Mich App 248, 256-257; 732 NW2d 605 (2007). That "turns on whether the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support [the instruction]." *People v Jones*, 497 Mich 155, 165; 860 NW2d 112 (2014) (quotation marks, citation, and brackets omitted).

Given the evidence proffered against defendant (as detailed earlier concerning his sufficiency and great-weight challenges), his counsel reasonably declined to pursue that instruction as a matter of strategy. As the prosecutor observes on appeal, "[f]or a second-degree murder instruction to be applicable, the jury would have been required to believe that either a first-degree home invasion or an armed robbery did not take place in Tamara Bates's home on the night she was murdered." So *without* the robbery or first-degree home invasion, there would have been no murder of Bates. A rational view of the evidence does not include that defendant and Thornton murdered Bates without committing a robbery or home invasion.

*Mere Presence Instruction*. Second, defendant insists that his trial counsel should have requested a "mere presence" instruction, whereby the jury would have been informed that a person's mere presence, even knowing that an offense is about to be committed, is not enough to make him or her an aider or abettor. See *People v Norris*, 236 Mich App 411, 419-420; 600 NW2d 658 (1999). We disagree that this failure rises to the level of deficient performance.

His trial counsel pursued a strategy to convince the jury that there was reasonable doubt as to whether defendant was even present during the commission of crimes. During trial, his attorney argued that the text messages were suspect, that Blond was not credible because he was trying to get a plea deal, and that there was no hard evidence placing defendant at the scene. In other words, he argued to the jury that defendant "had nothing to do with this." So, requesting a "mere presence" instruction in the face of trial counsel's defense strategy would have eroded any credence to its merits. Defendant cannot, therefore, overcome the presumption that his attorney's strategy was sound even with the benefit of hindsight.

*Unanimity Instruction*. The third jury-instruction issue concerns his trial counsel's failure to request a specific unanimity instruction.

Under the Sixth Amendment right to a jury trial and the Michigan Constitution, an accused is entitled to a unanimous jury verdict. US Const, Ams VI, XIV; Const 1963, art 1, §§ 14, 20; *Ramos v Louisiana*, 590 US 83, 93; 140 S Ct 1390; 206 L Ed 2d 583 (2020). Courts protect this right with a general unanimity instruction. See MCR 6.410(B); *Chelmicki*, 305 Mich App at 68. But sometimes a specific unanimity instruction may be required, such as "in cases in which more

than one act is presented as evidence of the actus reus of a single criminal offense and each act is established through materially distinguishable evidence that would lead to juror confusion." *Chelmicki*, 305 Mich App at 68 (quotation marks and citation omitted).

On that point, defendant contends, his trial counsel should have done more concerning the jury instructions for his felony-murder charge. Pertinent here, the jury instructions for felony-murder incorporated two predicate crimes, armed robbery and first-degree home invasion:

> [T]hat when he did the act that caused the death of Miss Bates, the defendant was committing or attempting to commit or helping someone else commit the crime of armed robbery and/or home invasion in the first degree.

He argues that the jury should have been instructed that it needed to agree on which of the underlying felonies supported the felony-murder conviction.

When "a statute lists alternative means of committing an offense which in and of themselves do not constitute separate and distinct offenses, jury unanimity is not required with regard to the alternate theory." *Id.* (quotation marks and citation omitted). And as this Court reasoned in our recent decision in *People v Fabela*, which concerned larceny and home invasion being predicate crimes for felony-murder, "[t]he elements listed in the felony-murder jury instruction given in this case constituted alternative means of proving a single element of the crime of felony-murder." Unpublished per curiam opinion of the Court of Appeals, issued March 24, 2025 (Docket No. 367929), p 7, vacated in part on other grounds ___ Mich ___; 21 NW3d 885 (2025). Yet, other unpublished caselaw points in the opposite direction. See *People v Richter*, unpublished per curiam opinion of the Court of Appeals, issued September 22, 2022 (Docket Nos. 355577 and 355578), pp 19-21 (felony-murder predicates of larceny and unlawful imprisonment required a specific unanimity instruction).

We need not take a side as to whether *Fabela* or *Richter* are more persuasive on this point because even if a specific unanimity instruction was required, defendant cannot establish the outcome would have been different had such an instruction been given. *Yeager*, 511 Mich at 488. This is so, because the jury convicted defendant of both armed robbery and home invasion and there was sufficient evidence of both. In sum, assuming without deciding that trial counsel's failure to request that instruction constituted deficient performance, defendant has not established prejudice.

*Conclusion.* For these reasons, trial counsel's failure to request instructions on second-degree murder, "mere presence," and unanimity do not merit relief.

## C. REQUEST FOR A SEPARATE TRIAL OR JURY

We next address defendant's contention that his trial counsel should have requested that defendant be tried separate from Thornton.

"There is no absolute right to separate trials, and in fact, a strong policy favors joint trials in the interest of justice, judicial economy, and administration." *People v Bosca*, 310 Mich App 1, 44; 871 NW2d 307 (2015), rev'd in part on other grounds, 509 Mich 851 (2022) (cleaned up).

But a trial court must sever a trial when necessary "to avoid prejudice to substantial rights of the defendant." MCR 6.121(C). "Prejudice requiring reversal occurs only when the competing defenses are so antagonistic at their cores that both cannot be believed . . . [b]ut incidental spillover prejudice, which is almost inevitable in a multi-defendant trial, does not suffice." *People v Furline*, 505 Mich 16, 21; 949 NW2d 666 (2020) (quotation marks and citations omitted). Additionally, a trial court "may" sever a trial "[o]n the motion of any party . . . on the ground that severance is appropriate to promote fairness to the parties and a fair determination of the guilt or innocence of one or more of the defendants." MCR 6.121(D). This permissive rule requires considering, among other factors, "the potential for confusion or prejudice stemming from either the number of defendants or the complexity or nature of the evidence[.]" *Id*.

Any reasonable attorney would have, according to defendant, moved for a separate trial under MCR 6.121(D). Why? Because the forensic evidence—namely Thorton's latent prints—only tied Thornton to the murder scene, and the jury likely relied too much on this forensic evidence. We disagree that trial counsel's performance was deficient on this point because the forensic evidence placing defendant's coconspirator, Thornton, at the scene would be highly relevant in a trial of defendant because other evidence (text messages and Blond's testimony) indicated that defendant and Thornton acted in concert. See MRE 401. See also *People v Hana*, 447 Mich 325, 350; 524 NW2d 682 (1994) ("A defendant normally would not be entitled to exclude the testimony of a former codefendant if the . . . court did sever their trials," and "a fair trial does not include the right to exclude relevant and competent evidence") (quotation marks and citation omitted).

### D. ALIBI WITNESS TESTIMONY

We next consider whether his trial counsel was ineffective for failing to call an alibi witness. He was not.

As part of his motion for a new trial and a *Ginther* hearing, defendant alleged that he informed trial counsel that his mother would be an alibi witness, claiming she was with him at the time of Bates's murder. He made that assertion and offer of proof through an affidavit from his post-conviction counsel, which stated in relevant part:

> 3. As part of my investigation into Mr. Chaney's appeal, I talked to his mother Beverly Renae Gray-Stutts who told me she was an alibi witness for Mr. Chaney. She told me that on April 4, 2011 that Mr. Chaney was home with her that night because she recalled receiving a phone call from her father that Tamara Bates had been killed. Prior to receiving that call, Mr. Chaney was home with her, and she received that call after 11:30 pm. She stated Mr. Chaney lived with her during this time and remembered what happened during this time because it was close to his birthday and because of all the shootings that happened that weekend, she recalled about 5 or 6, she asked Mr. Chaney to stay at home which he did.

> 4. Ms. Gray-Stutts stated she told Mr. Chaney she would be an alibi witness for him and to tell his trial counsel she would be an alibi witness but that his trial counsel never contacted her.

-10-

> 5. Mr. Chaney told me that he informed his trial counsel a couple of times that his mother was an alibi witness for him and his trial counsel told him he would reach out to her, but he never did.

The trial court found this argument unpersuasive. It noted defendant did not file an affidavit from his mother,[1] emphasized the presumption of effective performance, and concluded that his not calling her fell within a strategic decision left to trial counsel. The trial court also declined to conduct a *Ginther* hearing on account of trial counsel having passed away.

We agree with the trial court that defendant is not entitled to relief concerning his mother being an alibi. "Decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy," *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012), and again, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action *might be considered sound trial strategy*," *Strickland*, 466 US at 689 (quotation marks and citation omitted; emphasis added). Here, any decision to not pursue testimony from defendant's mother—as set forth in his counsel's affidavit presented below—could be considered sound trial strategy in that doing so "would have been a risky proposition." *See People v Gonzalez*, unpublished per curiam opinion of the Court of Appeals, issued April 12, 2007 (Docket No. 267568), p 3. That is, a jury could naturally view the testimony of a mother supporting her son facing a life-without-the-possibility-of-parole sentence with some skepticism, which could bolster the strength of the other evidence admitted against defendant and Thornton. Moreover, given the evidence presented at trial—the text messages, the testimony from Blond, and the latent prints—there is not a reasonable probability that testimony from defendant's own mother would have altered the outcome of the trial. *People v Ackley*, 497 Mich 381, 389; 870 NW2d 858 (2015).

With this holding, and because we conclude defendant "has not set forth any additional facts that would require development of a record to determine if defense counsel was ineffective," we also decline defendant's request for us to remand for a *Ginther* hearing. See *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007).

### E. DEFENSE EXPERT WITNESS

Finally, defendant asserts that his trial counsel was ineffective because he did not hire an expert to explain to the jury how to weigh the evidence against him and assess witness credibility. But without any specific offer of proof about "what this missing testimony would have been or how it would have assisted his case, he has not demonstrated that defense counsel's failure to procure an expert . . . witness . . . contravened trial strategy and deprived him of a substantial defense." *Solloway*, 316 Mich App at 190. Moreover, juries—not expert witnesses—determine credibility. See *Thorpe*, 504 Mich at 260.

---

[1] On appeal, defendant attached to his appellant brief affidavits from himself and his mother that largely replicate his attorney's affidavit. That represents an effort to expand the record on appeal, which he cannot do. See *Serges*, 351 Mich App at 133.

## VII. CONCLUSION

For these reasons, we affirm defendant's convictions, vacate his sentence for felony-murder and remand for resentencing consistent with this opinion.  We do not retain jurisdiction.


/s/ Adrienne N. Young
/s/ Stephen L. Borrello
/s/ Christopher M. Trebilcock